Charles Edwards, of the county of Halifax, in the State of Virginia, being possessed of the slaves in question, duly made his last will and testament on the 14th day of March, 1785; and thereby bequeathed one-third part of his estate to Letty, his wife, during her life, the residue of his estate to his children, to be equally divided among them, when his son, Leonard Edwards, should arrive at full age; and thereof appointed Letty, his wife, excutrix, and Thomas Edwards and Samuel Clay, executors.
The testator died in the county of Halifax aforesaid, on the 10th day of February, 1790; his will was proved in the court of that county on the 20th day of June following; and Letty qualified as executrix thereof, and soon afterwards possessed herself of the personal estate of the testator, and among other things, of the slaves in question, the said Thomas Edwards and Samuel Clay having refused to qualify or take any part in the management of said estate.
The said Letty, at the time of proving the will, with Robert Wade and others, her securities, entered into and, conditioned to (550) be void, if she should well and truly return an inventory of the estate of the said Charles Edwards, deceased, administer the said estate according to law, make a true and just account of her actions and doings therein, when required, and deliver and pay the legacies contained in the will according to law; which bond was required by and executed according to the tenor and effect of an act of the General Assembly of the State of Virginia.
The said Letty, on the 10th of June, 1793, intermarried with Leonard Cheatham, who joined with her in the administration of the said estate.
Robert Wade, the plaintiff, being one of the said securities, became alarmed at the manner in which the said Leonard and Letty were managing the said estate, and to protect himself and the other securities, filed his petition in the court of Halifax County aforesaid, praying relief, according to an act of the General Assembly of that State, in the following words, to wit: "When securities for executors and administrators conceive themselves in danger of suffering thereby, and petition the *Page 464 
court for relief, the court shall summon the executor or administrator, and make such order or decree therein, to relieve and secure the petitioners, by counter security or otherwise, as shall seem just and equitable." And such proceedings were had on the said petition, that the court aforesaid, on the 29th day of April, 1794 (the said Leonard and Letty having failed to give counter security) passed the following order, viz.: "It is ordered, therefore, that the said Leonard and Letty, his wife, executor, etc., as aforesaid, do deliver the estate of the said Charles Edwards, deceased, into the hands of the said Robert Wade, for his indemnity."
By virtue of this order or decree, the plaintiff was afterwards possessed in this State of the slaves in question, and remained possessed thereof until they come to the possession of the defendant, who still detains them from the plaintiff. The slaves were in the State of North Carolina, resident on a plantation of the testator, at the time of his death, (551) and have continued in this State ever since.
1st. Did that authority of the executrix, applied by the probate of the will, her qualification, and letters testamentary in the State of Virginia, so extend to this State as to enable her to prosecute suits here without obtaining letters testamentary in this State?
2d. Did that authority devolve on the plaintiff, by the operation of the law of Virginia, and the order made by Halifax County Court, so as to enable him, as trustee, to prosecute suits here in his own name?
3d. If the plaintiff had no such authority, will this action lie on his own possession (he being responsible to the creditors and legatees), notwithstanding he has named himself trustee?
1. It is a general rule of law that personal property shall be governed by the laws of that country where the owner is domiciled. 4 Term Rep., 192; Prec. in Chan., 577; 2 Vez., 35; Amb., 25; 1 Hay. Rep., 357; Williamson v.Smart and Kilbee, ante, 355.
And, therefore, a will made and proved according to the laws of the country where the testator resided, vests in the executors a right to all his personal property, wherever found. And the distribution of the property is governed by the property is found within a different jurisdiction, in Chan., 577; Toller, 47; Amb., 25; 2 Vez., 35. It is, however, held by some that whenever the property is found within a different jurisdiction, the executor must obtain letters testamentary from that jurisdiction before he can recover the property by suit. But as to this rule, it is to be observed:
1. That the reason assigned for it in England is merely formal; and founded on the right of jurisdiction only. 2 Ba. Ab., 399; 1 Com. Dig., 369; 1 Haywood's Rep., 357; 2 Vez., 35; Amb., 25. *Page 465 
2. That a new probate of will be not necessary, the formal letters in such cases being founded on the former probate, or letters of administration. Amb., 415.
3. That the executor may, without such formal letters, take the (552) property into his possession in any part of the world, if he can obtain it without suit. 2 Atk., 63.
4. That the reason of the rule having never existed in this State, the rule itself has never been received into practice; the courts permitting executors to maintain suits by virtue of letters obtained in any other country. A reason different from that assigned by the Judges of England induced our courts to adopt the rule as to administrators. It is this: They give bond and security for the faithful administration of the assets, and thereby the creditors of this State are secured in the recovery of their debts; otherwise, an administrator of another state or country might collect in the assets here, by an agent, and not pay the debts due to the citizens of the State. But executors do not give bond, and, therefore, the application of the rule would not have the same beneficial effect, and consequently, ought not be applied.
5. The courts of this State are bound by the probate of the will, and the grant of letters testamentary by the court of Halifax County, in Virginia. Fed. Const., Art IV, sec. 1; 1 Laws of Cong., 115.
The Constitution must mean something more than that a copy of a sentence of the court of one State should be evidence of that act of the court in the other states; for a copy of a record has that effect by the common law before the adoption of the Constitution, and I suppose it could not have been intended merely to enforce that common law principle. I therefore contend that the Constitution gives to the judicial acts of a court of record of our State the same force and effect in all the other states which they have in another court of same state, so far as they evidence a preexisting right or duty. And, if so, the right and authority of the executrix being given by the will, the effect of the probate and grant of letter testamentary, being only evidence of that right and authority, will extent to this State. But perhaps it will be objected that this argument will operate in favor of administrators as well as executors, and, consequently, cannot have any weight, as this question, so far as it affects administrators, has been determined. The answer to this objection is easy. An executor derives his (553) authority from the will, which is coextensive with his right under the will, the probate and letters being evidence of his right and authority; but an administrator derives his right and authority from the act of the court only, and, consequently, they cannot extend beyond the jurisdiction of the court that granted the administration. *Page 466 
 Second. It was the intention of the law of Virginia to deprive executors of the possession of the assets, and of all their powers and to vest them in the securities, and make them responsible for the after management of the estate. It must have this operation or the securities will not be protected against the waste and misconduct of the executors, and the creditors and legatees may be greatly injured. For the executor, if he should be sued, being exonerated from further responsibility by the order of the court, and having no assets in his hands to indemnify him for expenses, would defend himself only by pleading the order of the court and the delivery of the assets in consequence of it, and not the interest of the estate; but, permit judgment to pass against it, whether the claim was just or unjust; and if unjust, injure the legatees and oppress the securities; and whether just or unjust, subject the creditor to the necessity of bringing another action against the securities. The principal object of the act was to secure the rights of creditors and legatees, by compelling executors to give security. I ought to have a liberal construction, so as to give it this effect, without subjecting them to any additional trouble, delay, or expense and if my construction prevails, this object will be effected; but, if a contrary one should be adopted the consequences would frequently be injurious to creditors and legatees, and ruinous to the securities. It would certainly be inconvenient and absurd to give an action against one man, the executor, who has no interest in the event, and who most probably feels some resentment against the security; and to give the sole possession of the assets liable to satisfy the judgment to another person, the security, and make him responsible for the conduct of the executor. I have always understood that the (554) courts in Virginia have given this act the construction which I contend for; and believe that this plaintiff has prosecuted suits in his own name as trustee in the State of Virginia with effect.
The authority of the security, who by the order is converted into a trustee, must be as great and as extensive as the executors before the order was made; in fact, the security must be substituted in the place of the executor, or the objects of the act would almost entirely fail. For, if the authority of the trustee should be confined to Virginia, the executor might continue to collect in the assets in every other part of the world, and might waste them as fast as he collected them. This would be fatal to the security in many instances, and would have been so in the present, most of the assets being in the State.
Third. All persons who have a special property, and are answerable over, may maintain an action of detinue. 2 Ba. Ab., 46; 3 Com. Digest, 358. In this case the plaintiff had a special property in the slaves, was legally in possession of them, and is answerable over to the creditors and legatees. The action will, therefore, well lie, unless the circumstance of *Page 467 
his having named himself trustee is fatal to it. That addition is mere surplusage, and will not vitiate the action. The plaintiff declared on his own possession, and therefore the addition of trustee can have no more influence in the cause than if an executor should being an action on his own contract of the sale of the assets, and name himself executor, which has always been held to the surplusage.
As the plaintiff has brought his action as trustee, and declared in his own possession as trustee, he must show a title as trustee, or he cannot recover. His possession in this State being in his individual capacity, will not support the action. He makes out his title to the property by means of the trust; consequently, it was necessary to name himself trustee, as much so as it would have been to have named himself executor had he been suing in that right. Indeed, he alleges that he possesses the authority of an executor; and, surely, if he had brought his action as executor he could not recover in his individual capacity.
It appears by the record in this case that the plaintiff had possession of the property in question, under an order of the court of Halifax County in the State of Virginia, which directed that the property should be delivered by the executrix to him for his greater security; and that the court was empowered by the laws of that state to make such an order. It has been urged for the defendant that the executrix herself could not maintain an action in this State, by virtue of *Page 468 
letters testamentary obtained in Virginia; and that the plaintiff could not derive an authority from her to bring suits which she herself did not possess. That point has never been directly decided in the State, (556) nor is it indispensably necessary that it should be decided in this case. If, however, the executrix had sold that property, and the purchaser, in consequence thereof, had obtained the possession of it, that purchaser could maintain an action for it in this State, in case he became dispossessed of it. So, in the present case, the property was conveyed to the plaintiff under very high authority, so much so, that we are inclined to believe that, against that conveyance (or what is tantamount thereto, the order of the court), an action could not be sustained for it by executrix in her own name. If so, the power of suing devolved upon the plaintiff. But be this as it may, we think this action may be sustained by the present plaintiff, by virtue of the right which he derived to the property from the order of the court, and the possession which he had of it under that order. For this reason, we think judgment should be entered for the plaintiff.